DAVID L. ANDERSON (CABN 149604))
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ALEXANDRA J. SHEPARD (CABN 205143)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6767
    FAX: (415) 436-7234
    Alexandra.Shepard2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL SHIFERAW,<br><br>    Defendant. | CASE NO. 18-CR-600-WHA<br><br>UNITED STATES' OPPOSITION TO MOTION TO REVOKE DETENTION ORDER<br><br>Hearing Date: June 18, 2019<br>Time: 2:00 p.m.<br>Before: Hon. William H. Alsup |

On November 23, 2018, Defendant Michael Shiferaw robbed a bank in the Marina District in San Francisco. He was arrested and charged with bank robbery by force, violence, and intimidation (18 U.S.C. § 2113(a)), and released on an unsecured bond. While out on pretrial release and living in a halfway house, Mr. Shiferaw was arrested for robbing another bank in San Francisco. The government then moved to revoke Mr. Shiferaw's bond. After considering the government's proffer, the defendant's proffer, and the parties' arguments, Judge Kim found that the defendant robbed the second bank and that no condition or combination of conditions will reasonably assure the safety of the community. She revoked the defendant's bond and ordered him detained.

//

//

Where there is probable cause to believe the defendant has committed a felony, the Bail Reform Act establishes a presumption that no combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. The defendant's proposed conditions of release were previously rejected by Judge Kim, and cannot satisfactorily overcome the presumption that he presents a danger to the community. Accordingly, the motion should be denied.

## STATEMENT OF FACTS

### I. The First Bank Robbery

On November 23, 2018, Michael Shiferaw entered a Citibank in the Marina District of San Francisco, showed the teller a demand note which purportedly threatened a weapon, and demanded cash. The teller was his sister, Meron Shiferaw. Meron Shiferaw placed an unusually large quantity of cash directly into a white plastic bag carried by Mr. Shiferaw. Mr. Shiferaw then fled the Citibank with $21,100.

During the incident, Mr. Shiferaw wore distinctive clothing and did not wear any facial disguise. As a result, Citibank's security cameras were able to capture and record Mr. Shiferaw's outfit, facial hair, and a portion of the side of his face. On the day of the robbery, approximately 3.5 hours prior to the incident, security camera footage retrieved from Mr. Shiferaw's apartment complex captured him departing the apartment complex wearing the identical outfit – including distinctive shoes, jeans, a camouflage pattern hooded sweatshirt, and hat – worn during the bank robbery. Furthermore, less than an hour after the robbery, the same security camera captured Mr. Shiferaw returning to the apartment complex wearing the same distinctive shoes and pants, and carrying the white plastic bag used during the robbery. Apart from the identical items of clothing, the robber's race, age, sex, general height, facial hair, hair, and build appear identical to that of Mr. Shiferaw. Cell phone location records further implicated him in the robbery, and he was arrested on a criminal complaint during the execution of a search of his apartment. The search revealed at least some of the clothing items Mr. Shiferaw wore during the robbery.

//
//
//

## II.     The Second Bank Robbery

On March 20, 2019, while on pretrial release, Mr. Shiferaw robbed a Bank of America branch located near his apartment building in the Richmond District in San Francisco.  Video surveillance footage from Mr. Shiferaw's apartment building, proffered by defense counsel in the May detention hearing, places him in the building in different clothing at 3:55 p.m. that day.  Mr. Shiferaw's apartment building is .9 miles from the second bank.  At 4:30 p.m., Mr. Shiferaw entered the second bank, approached a teller, and orally demanded cash, warning that he had a gun.  Bank surveillance cameras captured high resolution video of the robber.  Although the robber wore a hat and sunglasses, still images extracted from the video show that the robber bears a strong resemblance to Mr. Shiferaw.  The description of the robber, including height, weight, build, approximate age, and complexion, is also consistent with Mr. Shiferaw.

Mr. Shiferaw was positively identified as the robber by an employee at the halfway house based on the bank surveillance photos.  That same employee advised that Mr. Shiferaw had cut his hair and beard shorter about a week before the second robbery occurred.  The night of the robbery, defendant returned to the halfway house and tested positive for alcohol, in violation of one of the conditions of his pretrial release.

## III.     Procedural History

Mr. Shiferaw was charged by Complaint on December 6, 2018.  (Dkt. #1.)  On December 13, 2018, the defendant and his sister Meron Shiferaw were indicted by a grand jury for one count of violating 18 U.S.C. § 2113(a) (Bank Robbery by Force, Violence, and Intimidation) and 18 U.S.C. § 2 (Aiding and Abetting).  (Dkt. #7).  On December 13, 2018, following an initial detention hearing, Judge Kim ordered the defendant released on a $75,000 unsecured bond.  (Minute Entry, Dkt. #9).  The bond was subject to the standard release condition that the defendant not commit another Federal, State, or local crime, and special conditions which included that he not use alcohol to excess and not leave the halfway house except for work, medical appointments, and legal and court appearances, at the discretion of Pretrial Services.  On January 17, 2019, a superseding indictment was filed charging Michael Shiferaw and Meron Shiferaw with an additional count of bank robbery under 18 U.S.C. § 2113(a).  (Dkt. #25).  Judge Kim held additional bond hearings for Michael Shiferaw on February 11 and 19, 2019

to consider Mr. Shiferaw's request to leave the halfway house and return to his apartment building or another residence; the request was not granted.  (Minute Entries, Dkt. ## 29, 35).

On March 28, 2019, Pretrial Services filed a Form 8, indicating that Mr. Shiferaw had violated a condition of his pretrial release.  (Dkt. #46).  The court held a bail hearing on April 1, 2019.  (Dkt. #47).  At the outset of the hearing, the government reported Mr. Shiferaw's involvement in the second bank robbery and requested that his bond be revoked.  After considering the parties' proffers and hearing from Pretrial Services, Judge Kim revoked the defendant's bond and remanded him to custody.  In her written order, Judge Kim found by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  (Dkt. #70).[1]  Further, the Court made a finding in support of her ruling that "on March 20, 2019, while on pretrial release in the above-captioned case, the defendant robbed a Bank of America branch at 5500 Geary Boulevard in San Francisco."  *Id.*  During a status conference on April 9, this Court considered and rejected without prejudice's defendant's request to reconsider his release on bond.  (Dkt. #48).

On April 25, 2019, a Second Superseding Indictment was filed against Mr. Shiferaw, charging him with a second count of bank robbery by force, violence, and intimidation (18 U.S.C. § 2113(a)) in connection with the second bank robbery.  (Dkt. #56).  On May 2, 2019, Judge Kim held a further detention hearing.  At the hearing, she considered additional evidence and proffers provided by the parties and denied Mr. Shiferaw's request to be released on bond to the halfway house with stringent conditions, including electronic monitoring and three new sureties.  (Dkt. #62).  This motion followed.

**ARGUMENT**

**I.   Legal Standard**

"Although the Court applies Section 3142(e) and (f) [of the Bail Reform Act] in ruling on a motion for pretrial detention at the outset of a case, an entirely different set of standards governs whether the court detains a defendant charged with violating conditions."  Weinberg, FEDERAL BAIL AND DETENTION HANDBOOK (2018) § 11:3.  Subparagraph (b) of Section 3148 provides as follows:

---

[1] The government provided Judge Kim's clerk with a proposed order on April 2, 2019.  Counsel for the government discovered after the defendant filed the instant motion that a detention order was never filed, and followed up with Judge Kim's courtroom deputy on May 30.  The Court then signed the proposed order on May 30, *nunc pro tunc* to April 2.

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –
>
> (1) finds that there is –
>     (A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or
>     (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that –
>     (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>     (B) the person is unlikely to abide by any condition or combination of conditions or release.

18 U.S.C. § 3148(b)(1) and (2).

A violation of pretrial release creates a rebuttable presumption in favor of detention: "If there is probable cause to believe that, while on release, the person committed a Federal, state, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

The Bail Reform Act lists factors that the court must consider in determining whether conditions exist that could reasonably assure the defendant's appearance as required or the safety of any other person and the community. 18 U.S.C. § 3142(g). These factors include (1) the nature and circumstances of the charged crime, including specifically whether it is a controlled substance offense; (2) the weight of evidence against the defendant; (3) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release, and the nature of any collateral to be posted as bond. *Id.*

## II.     The Defendant Does Not Make a Showing That the Detention Order Should be Revoked

As discussed below, Judge Kim's decision to detain Mr. Shiferaw should stand. A fair reading of the § 3142 factors suggests that the defendant presents a serious danger to the community and that he is unlikely to abide by any condition or combination of conditions or release. The defendant's motion fails to establish any basis for this Court to revisit Judge Kim's order.

//

### A. Nature and Circumstances of the Offenses Charged

Defendant is charged with a crime of violence under 18 U.S.C. § 2113(a). In particular, he is charged with robbing two banks by force, violence and intimidation, the second while he was on pretrial release. In both robberies, he warned the tellers that he had a weapon. Even assuming the threat of a weapon in the first robbery was instead a story created by Mr. Shiferaw and his sister and co-defendant, Meron Shiferaw, the threat was very real in the second robbery.

### B. The Weight of the Evidence

The weight of the evidence against the defendant in this case is substantial. Although this is the least important factor, *see United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), the evidence clearly establishes that Mr. Shiferaw committed both bank robberies.

Mr. Shiferaw was captured on video surveillance during the first bank robbery, as well as before and after in his apartment building, wearing the same distinctive clothing. *See* Exh. A (still from the apartment building video surveillance footage showing Mr. Shiferaw before the robbery); Exh. B (stills from the Citibank video surveillance footage of the robbery); Exh. C (stills from the apartment building video surveillance footage showing Mr. Shiferaw after the robbery); *see also* Exh. D (arrest booking photo). Cell phone location data places the defendant in the vicinity of the first bank at the time of the robbery, and a search of his apartment turned up some of the clothing items used in the robbery.

Mr. Shiferaw was again captured on video surveillance during the second robbery. Stills from the video show an individual in the video bears a strong resemblance to Mr. Shiferaw, and the description of the robber, including height, weight, build, approximate age, and complexion, is also consistent with Mr. Shiferaw. As previously discussed, surveillance footage from Mr. Shiferaw's apartment building place him near in place and time to the second bank robbery. *See* Exh. E (stills from the apartment building video surveillance footage showing Mr. Shiferaw before the robbery); Exh. F (stills from the Bank of American video surveillance footage of the robbery); *see also* Exh. G (Mr. Shiferaw's driver's license photo).

It defies logic that Mr. Shiferaw would repeat the mistakes which led to his arrest the first time. It appears that instead, he took steps to disguise himself and manufacture an alibi. A week before the second robbery he cut his distinctive hair and beard. In the hour before the robbery, he took pains to be

seen multiple times on the surveillance camera of his apartment building wearing different clothing than the robber.[2] According to counsel he allegedly entered the building one last time before the robbery and did not exit again until after the robbery. Def's Mtn. at 3. Defendant asserts that this footage calls into question the identity of the second robber. However, the property manager for the apartment complex advised the government, and the case agent has observed, that there are multiple entrances and exits to the building. Rather than exonerate him, this video footage merely places the defendant close in location and near in time to the second bank robbery. In fact, the lobby footage establishes that Mr. Shiferaw had ample time to enter his apartment building, change his clothes, exit from another door, walk .9 miles to the Bank of America, and rob it. Moreover, as captured by the bank surveillance video, Mr. Shiferaw kept his cell phone obviously glued to his ear during the second robbery; a teller at the bank advised that she believed the robber was only pretending to use the phone. This evidence all suggests that Mr. Shiferaw appeared to be setting up his alibi; he even asked the court, after she ordered him detained, to look at the cameras in his apartment and check his phone records. (Audio of April 1, 2019 hearing, Dkt. # 47).

However, there was no doubt in Judge Kim's mind that Mr. Shiferaw committed the second bank robbery. After looking at the bank surveillance photos she stated on the record, in support of her detention ruling, "I'm looking at these pictures. This is Mr. Shiferaw. I don't know what else you think we would need to identify him." *Id.* Judge Kim was unpersuaded by the defendant's proffer of the apartment surveillance footage in the second hearing, noting that the footage was not compelling enough to overcome the bank surveillance photos and expressing concern that Mr. Shiferaw was at his apartment without permission. (Audio of May 2, 2019 hearing, Dkt. #62). The weight of the evidence in this case supports detention.

**C.    Defendant's History and Characteristics**

Mr. Shiferaw is a native of Ethiopia and a legal permanent resident of the United States. He came to the United States in January 2011. He reported to Pretrial Services that he had lived in the Bay Areas since his arrival in 2011; however, his counsel reports that he lived in Washington D.C. when he

---

[2] Counsel for the government has requested a copy of the lobby surveillance footage from defense counsel but has not yet received it.

came to the U.S. in 2011 and "eventually" moved to the Bay Area. Def's Mtn. at 2. He was employed part-time as an apprentice tile-setter when he was detained.

At the time of his first arrest, he had lived at 950 Cabrillo Street in the Richmond District of San Francisco for three years. The former property manager of 950 Cabrillo advised that she had been trying to evict him from the building for failure to pay rent for several months. She also noted that other tenants had complained about Mr. Shiferaw because they suspected he was dealing drugs from the apartment.

Mr. Shiferaw appears to have had some difficulty obtaining sureties. The individual who acted as surety on Mr. Shiferaw's bond requested to be withdrawn, and the defendant has offered three new sureties: his father, uncle, and a sister who was not involved in the first robbery. (Audio of April 1, 2019 hearing, Dkt. # 47). Judge Kim noted that not one of these individuals, all members of Mr. Shiferaw's family, was willing to act as surety when he was arrested in connection with the first robbery. *Id*. Even assuming these individuals would be willing to sign an unsecured bond on behalf of the defendant, this has already proven not to be an effective mechanism to deter the defendant from engaging in criminal behavior.

Mr. Shiferaw was charged with robbing the second bank while out on pretrial release, a little over three months after his initial arrest. His conduct was not merely a technical violation of the law, but instead a crime of violence in which he threatened a gun. In his eight years in the United States, Mr. Shiferaw has been arrested nine times (including for the two bank robberies). He was arrested in 2013 for second degree robbery, second degree burglary, and receiving stolen property, although it appears that these charges were dismissed following successful completion of a diversion program. He also has arrests from 2014 to 2017 for receiving stolen property, driving under the influence of alcohol and drugs, and possession with intent to distribute marijuana, but these all appear to have been dismissed for lack of evidence. However, according to the Pretrial Services report prepared in December 2018, he has no convictions.

**D.   Nature and Seriousness of the Danger to the Community if Defendant is Released**

The danger presented by the defendant's release into the community is substantial given that his recent violation of his release conditions suggests that he could engage in criminal activity once again.

In fact, the record strongly suggests that Mr. Shiferaw is not amenable to any condition or combination of conditions of supervised release. In the short time since he has been on pretrial release, the defendant has demonstrated his inability or unwillingness to comply with court-ordered conditions. Mr. Shiferaw was arrested for committing a federal crime while on pretrial release. In addition, on the day he was initially detained, Mr. Shiferaw was before Judge Kim on a Form 8 filed by Pretrial Services alleging that he violated another condition of his pretrial release by drinking alcohol to excess on the evening of the second bank robbery. Moreover, after defendant proffered video footage showing himself in his apartment building before the second robbery, Pretrial Services advised the court that Mr. Shiferaw was further violating his conditions of release by being at his apartment without their permission. This willingness to flout the law and the Court shows that he poses a significant danger to the community if released. This record does not support his request to revoke the order of detention.

## CONCLUSION

Magistrate Judge Kim's decision to detain the defendant pending trial is based in fact and supported by law. The Court should deny the defendant's Motion to Revoke Detention.

DAVID L. ANDERSON
United States Attorney

DATED: June 4, 2019

/s/
ALEXANDRA J. SHEPARD
Special Assistant United States Attorney